**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |  |
|---|---|---|
| ZOIA TSOLERIDIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 23-12271-MJJ |
| | ) | |
| LOON MOUNTAIN RECREATION COPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OF DECISION**

May 4, 2026

JOUN, D.J.

Zoia Tsoleridis ("Plaintiff" or "Ms. Tsoleridis") brought this action against Loon Mountain Recreation Corp. ("Defendant" or "Loon") on October 3, 2023. [Doc. No. 1]. Ms. Tsoleridis alleges that upon traveling from her home in Massachusetts to vacation at the Loon Mountain Ski Resort in New Hampshire (the "Loon Mountain"), Loon caused her to suffer severe injuries in a snow tubing accident. On September 11, 2024, I denied Loon's Motion to Dismiss for lack of personal jurisdiction, [Doc. No. 29]. Now that discovery is complete, Loon moves for summary judgment, arguing that deposition testimony shows that there is no evidence to support this court's specific personal jurisdiction over Plaintiff. [Doc. No. 53]. For the reasons explained below, the Motion is <u>GRANTED</u>. The matter shall be <u>TRANSFERRED</u> to the District Court of New Hampshire.

## I.   BACKGROUND[1]

The Court summarizes the following operative facts, "not as they necessarily are, but rather as a jury might reasonably find them to be in favor of . . . the non-movant," Ms. Tsoleridis. *Doe v. Brown Univ.*, 43 F.4th 195, 200 (1st Cit. 2022). The following facts are undisputed.

Plaintiff lives in Massachusetts. [Doc. No. 73 at ¶ 1]. Defendant operates Loon Mountain Ski Resort, which is located in New Hampshire. [*Id.* at ¶ 2]. Loon advertises in Massachusetts and is well known in Massachusetts as a major resort. [*Id.* at ¶ 31(g) (citing Doc. No. 57-2 at ¶ 9)]. During their visit to Loon, Plaintiff was with a group of family and friends for the weekend that included her brother, Kosta Tsoleridis ("Kosta"), his wife Caity Tsoleridis ("Caity"), Plaintiff's then-boyfriend Chad Taylor ("Chad"), Kosta and Caity's friends Nick Tavano and his wife Ashley Tavano ("Ashley"), as well as the Tavano and Tsoleridis children. [*Id.* at ¶ 4].

Sometime in January of 2023, Plaintiff's brother, Kosta, and his wife, Caity, decided to plan a skiing trip with their children and approached the Plaintiff about joining them for a family ski vacation. [*Id.* at ¶ 31(a) (citing Doc. No. 57-2 at ¶ 2); *id.* at ¶ 32(a) (citing Doc. No. 57-3 at ¶ 2)]. The Tsoleridis family had an uncle who had owned a residence at Loon, and Kosta had skied at Loon many times before the trip at issue. [*Id.* at ¶ 21]. The Plaintiff's and Kosta's mother, Deb

---

[1] I will endeavor to parse which disputes are genuine and material. *See Atain Specialty Ins. Co. v. Davester LLC*, 518 F. Supp. 3d 551, 555 (D. Mass. 2021) ("Disputes over facts that are irrelevant or unnecessary will not preclude summary judgment") (citation omitted). To the extent that any facts are not properly disputed, those will be considered undisputed. *See Muniz v. RXO Last Mile, Inc.*, 2023 WL 5353749, at *2 (D. Mass. Aug. 21, 2023) (finding responses to statement of facts obstructive where the dispute merely raises "distinctions without a difference" or "restates legal standards to manufacture a dispute"); *Guerrios Flores v. S.M. Med. Servs., C.S.P.*, 2020 WL 1698993, at *2 (D.P.R. Apr. 7, 2020) ("Responses which do not oppose the truth of the statement offered and are either irrelevant to the matter at hand, provide additional evidence not related to the fact in question and/or failed to contradict it are insufficient to properly controvert a material fact") (citation omitted). "Disputed" facts that are not supported by citations to the record will also be considered undisputed. L.R., D. Mass. 56.1 ("A party opposing the motion shall include a concise statement of the material facts of record as to which it is contended that there exists a genuine issue to be tried, with page references to affidavits, depositions and other documentation").

Tsoleridis, testified that although she only ever took Plaintiff skiing as a child once (to Wachusett, never to Loon), Kosta went skiing as a child at Loon multiple times over the years with Deb's brother (Kosta's and the plaintiff's uncle), who was the one with the residence at Loon. [*Id.*]. Kosta and Caity have young children, as did others in the group, so it was important to choose a destination that offered activities beyond skiing for the kids. [*Id.* at ¶ 31(b)-(c), (e) (citing Doc. No. 57-2 at ¶¶ 3–4, 6)]. Loon was suggested as a destination. [*Id.* at ¶ 31(f) (citing Doc. No. 57-2 at ¶ 7)]. Plaintiff testified that she "knew that they [Kosta, Caity, Nick and Ashley] picked Loon just 'cause we know the mountain from our uncle and from Kosta always going when he was younger. So the mountain was already picked. The Airbnb, they just asked me if I could look at it to see if I liked it 'cause I was going to be paying to go." [*Id.* at ¶ 7 (citing Doc. No. 53-2 at 15, 62:16-23]. While the parties dispute about who first proposed the ski trip, it is undisputed that Kosta testified it was his idea to go to Loon specifically. [*Id.* at ¶¶ 5, 12–14, 17]; [Doc. No. 53-3 at 7, 15:7–10]. Additionally, it was Caity who conducted the research on Loon's website that played a role in Caity and Kosta's decision for the group to go to Loon. [Doc. No. 73 at ¶ 26]; [Doc. No. 57-3 at ¶¶ 8–9]; [Doc. No. 53-7 at 14, 40:1–9].

Plaintiff understood that Loon held itself out as a family friendly environment and that they offered more than just skiing. [Doc. No. 73 at ¶ 31(h) (citing Doc. No. 57-2 at ¶ 10)]. Because Loon's website advertises activities other than skiing, including a tubing experience specifically designed for children, the decision was made to go to Loon. [*Id.* at ¶ 32(g)-(h) (citing Doc. No. 57-3 at ¶¶ 8–9)]. The purpose of the trip was to ski and participate in other child-friendly activities, including snow tubing; the group would not have chosen Loon if skiing were not possible, and likewise would not have selected Loon if it did not offer tubing. [*Id.* at ¶ 31(i)-(k) (citing Doc. No. 57-2 at ¶¶ 11–13)]. Caity learned about tot tubing from Google. [Doc. No. 53-7 at 14, 40:1–9].

Loon's offerings of the tot tubing and the ice castles played an important role in the decision to go to Loon. [Doc. No. 73 at ¶ 54]; [Doc. No. 53-4 at 4, 24:20–24]; [Doc. No. 53-3 at 9, 17:7–17].

On January 13, 2023, Caity booked a house through Airbnb for the weekend of February 10-13, 2023. [Doc. No. 73 at ¶¶ 9, 51]. On January 22, 2023, Plaintiff purchased tickets for herself and Chad only to ski at Loon on February 11, 2023, and she did so online while she was in Massachusetts. [*Id.* at ¶¶ 8, 23, 31(m), 52]; [Doc. No. 57-2 at ¶ 15]. Caity purchased her family's lift tickets and tubing tickets a week later, on January 29, 2023. [Doc. No. 73 at ¶ 53].

According to Plaintiff, when purchasing lift tickets for herself and Chad, she reviewed only the portion of the Loon website related to the "admissions ticket or lift ticket." [*Id.* at ¶ 24 (citing Doc. No. 53-2 at 22, 69:3–13)]. The Plaintiff did not review any other portion of the Loon website, including pages relating to the trail map, snow tubing, or any other information. [Id. at ¶ 25 (citing Doc. No. 53-2 at 22, 69:14–70:8)]. Nor does the Plaintiff's affidavit indicate that she relied on any advertising on the website; instead, it reflects that she simply purchased a ski lift ticket without reference to any other page. [*Id.* (citing Doc. No. 57-2 at 3)].

Plaintiff brings several causes of action, which all arise out of and relate to alleged injuries that she suffered at Loon while tubing there on or about February 11, 2023. [*Id.* at ¶ 3].[2]

---

[2] The parties dispute the extent of Plaintiff's involvement in the planning of the ski trip to Loon after Loon was picked as the destination. Text messages produced for the first time in response to the summary judgment motion indicate that Plaintiff helped Caity pick the Airbnb, which Caity later booked. [Doc. No. 57-4]. Defendant argues that the court should not consider the text messages given their untimely production and the unreliable nature of those text messages. Even if I choose to consider these text messages, I find that they do not bear on whether Loon's advertising in Massachusetts had a nexus to Plaintiff's decision to go to Loon; they only show that Plaintiff helped to plan the trip *after* Loon was chosen as a destination. As such, I find that the text messages do not create a dispute of material fact bearing on whether this court has personal jurisdiction over Loon.

## II. PROCEDURAL HISTORY

Plaintiff commenced this action on October 3, 2023. [Doc. No. 1]. On September 11, 2024, I denied Loon's motion to dismiss for lack of personal jurisdiction. [Doc. No. 29]. On September 30, 2025, Loon filed the instant Motion for Summary Judgment due to lack of specific personal jurisdiction. [Doc. No. 53]. On October 23, 2025, Plaintiff filed its Opposition. [Doc. No. 57]. On October 29, 2025, Loon filed its Reply. [Doc. No. 58]. On November 18, 2025, Plaintiff filed a Sur-Reply. [Doc. No. 65].

## III. LEGAL STANDARD

"Summary judgment is appropriate when the moving party shows that 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Joseph v. Lincare, Inc.*, 989 F.3d 147, 157 (1st Cir. 2021) (quoting Fed. R. Civ. P. 56(a)). "A dispute is 'genuine' if the evidence is such that a reasonable jury could resolve the point in the favor of the non-moving party, and a fact is 'material' if it has the potential of affecting the outcome of the case." *Taite v. Bridgewater State Univ., Bd. of Trustees*, 999 F.3d 86, 93 (1st Cir. 2021) (cleaned up). Once a party properly supports a motion for summary judgment, the opposing party "bears the burden of producing specific facts sufficient to deflect the swing of the summary judgment scythe." *Lincare*, 989 F.3d at 157 (cleaned up).

In assessing whether a genuine dispute of material fact exists, courts "look to all of the record materials on file, including the pleadings, depositions, and affidavits," while "neither evaluat[ing] the credibility of witnesses nor weigh[ing] the evidence." *Ahmed v. Johnson*, 752 F.3d 490, 495 (1st Cir. 2014). The record must be examined, however, "in the light most favorable to the nonmovant[,] . . . drawing all reasonable inferences in that party's favor." *Lopez-Hernandez v. Terumo Puerto Rico LLC*, 64 F.4th 22, 28 (1st Cir. 2023). And the Court "proceed[s] with caution

and restraint when considering summary judgment motions where, as here, issues of pretext, motive, and intent are in play." *Taite*, 999 F.3d at 93.

## IV. ANALYSIS

### A. <u>Specific Personal Jurisdiction</u>

At the pleadings stage, I concluded that the allegations in the complaint were sufficient to support this Court's exercise of specific personal jurisdiction over Loon. [Doc. No. 29]. In particular, I relied on Loon's admission that it advertised its skiing and tubing offerings in Massachusetts, as well as Plaintiff's factual proffer that such advertising "played some causal role in her patronizing the Loon Resort based on its reputation when her tubing accident occurred." [*Id.* at 10]. I further held that, "[a]ccording to Ms. Tsoleridis' factual proffer, Loon's website content, promoting the Loon Resort's tubing experience, played a but-for-causal role in Ms. Tsoleridis buying her ticket on the website and patronizing the Loon Resort when her tubing accident occurred." [*Id.*]. Fact discovery has since revealed a different account. Defendant contends that deposition testimony from Plaintiff and her family members demonstrates the absence of any "nexus" between the Plaintiff's claims and Loon's activities in Massachusetts. I agree.

"To establish personal jurisdiction in a diversity case, a plaintiff must satisfy both the forum state's long-arm statute and the Due Process Clause of the Fourteenth Amendment." *C.W. Downer & Co. v. Bioriginal Food & Sci. Corp.*, 771 F.3d 59, 65 (1st Cir. 2014). The relevant provision of the Massachusetts' long-arm statute here provides that a court may exercise personal jurisdiction over an out-of-state Defendant who is "transacting any business in this commonwealth." Mass. Gen. Laws ch. 223A, § 3(a). "For jurisdiction to exist under section 3(a) of the Massachusetts statute, 'the facts must satisfy two requirements—the defendant must have transacted business in Massachusetts, and the plaintiff's claim must have arisen from the transaction of business by the

defendant.'" *Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc.*, 825 F.3d 28, 34 n.3 (citing *Tatro v. Manor Care, Inc.*, 416 Mass. 763, 767 (1994)). The second requirement—whether Plaintiff's injury arose from Defendant's transactions in Massachusetts—is in dispute here.

"The jurisdictional requirements imposed by the Massachusetts long-arm statute are quite similar to, though not completely congruent with, the jurisdictional requirements imposed by the Due Process Clause." *Baskin-Robbins*, 825 F.3d at 34. Given that "the modest difference between these requirements is not material here," I move directly to the constitutional analysis. *Id.*; *see also Phillips v. Prairie Eye Ctr.*, 530 F.3d 22, 26 (1st Cir. 2008) (proceeding directly to the constitutional analysis, because the Supreme Judicial Court of Massachusetts has interpreted the state's long-arm statute "as an assertion of jurisdiction over the person to the limits allowed by the Constitution of the United States") (citing "*Automatic" Sprinkler Corp. of Am. v. Seneca Foods Corp.*, 361 Mass. 441 (1972)); *Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 290 F.3d 42, 52 (1st Cir. 2002) (same); *Sawtelle v. Farrell*, 70 F.3d 1381, 1388 (1st Cir. 1995) ("[W]hen a state's long-arm statute is coextensive with the outer limits of due process, the court's attention properly turns to the issue of whether the exercise of personal jurisdiction comports with federal constitutional standards.").

In order to subject an out-of-state Defendant to personal jurisdiction in that forum, the Due Process Clause requires that the Defendant "have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 319 (1945) (quoting *Milliken v. Meyer,* 311 U.S. 457, 463 (1940)). "The First Circuit employs a tripartite analysis to determine whether the exercise of specific jurisdiction is appropriate: 1) whether the claims arise out of or are related to the defendant's in-state activities, 2) whether the defendant has purposefully availed itself of the

7

laws of the forum state and 3) whether the exercise of jurisdiction is reasonable under the circumstances." *Rodriguez v. Samsung Elecs. Co.*, 827 F. Supp. 2d 47, 51 (D. Mass. 2011). "[I]f the Court finds one of the elements lacking, it need not examine the others." *Id.* Because Plaintiff fails to meet the first prong of relatedness, this Court lacks specific jurisdiction over Loon. *Id.* at 52 ("[P]laintiffs' failure to demonstrate relatedness obviates the Court's need to weigh purposeful availment or reasonableness.").

### 1.   Relatedness

The relatedness prong requires the plaintiff to show "a demonstrable nexus between its claims and the defendant's forum-based activities, such that the litigation itself is founded directly on those activities." *C.W. Downer & Co.*, 771 F.3d at 66 (citation omitted). This test is a "flexible, relaxed standard." *Id.* (citation omitted). However, "[t]he proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Walden v. Fiore*, 571 U.S. 277, 290 (2014). "There must be more than just an attenuated connection between the contacts and the claim; the defendant's in-state conduct must form an important, or at least material, element of proof in the plaintiff's case." *Medici v. Lifespan Corp.*, 239 F. Supp. 3d 355, 370 (D. Mass. 2017) (citation omitted). "Questions of specific jurisdiction are always tied to the particular claims asserted." *Phillips*, 530 F.3d at 27.

Plaintiff argues that the evidence establishes that the relatedness prong has been met. Specifically, Plaintiff points to the following facts: (1) Kosta grew up going to Loon, but his suggestion to go to Loon was not the only factor in the ultimate decision to go; (2) Loon was suggested as a destination specifically due to its skiing and tubing offerings for children; (3) Plaintiff understood that Loon held itself out as a family-friendly environment offering more than just skiing; (4) "the group's ultimate decision to go to Loon was a direct result of the defendant's

marketing efforts to solicit business from plaintiff and her family in Massachusetts;" (5) Plaintiff and Caity coordinated the Airbnb and the dates for the trip such that Plaintiff was "directly involved with and played a central role in planning the trip, particularly with finding a place to stay for the weekend" and; (6) until the group booked a place to stay, they were still considering other resorts, such as Bretton Woods. [Doc. No. 57-2 at 2–5]. Based on these facts, Plaintiff contends that "*[t]he group* did not decide to go to Loon based on Kosta Tsoleridis' suggestion," rather, "they were still considering other resorts" until a final plan was made, and the "the determining factor in *the group's* decision to go to Loon rather than another resort was Loon's offerings other than skiing – specifically, snow tubing – which Loon advertises on its website, and *which Caitlin Tsoleridis learned about on Loon's website*." [*Id.* at 5] (emphasis added). These assertions, however, are insufficient to create a genuine dispute that the Plaintiff was induced to visit Loon by its advertising.

Loon has proffered ample evidence that Plaintiff's decision to attend the group ski trip was not influenced by Loon's advertising. First, it is undisputed that Plaintiff herself testified: "I knew that they picked Loon just 'cause we know the mountain from our uncle and from Kosta always going when he was younger. So the mountain was already picked." [Doc. No. 73 at ¶ 7 (citing Doc. No. 53-2 at 15, 62:16-20)]; Second, Plaintiff explained that she explored Airbnbs because she was asked if she "could look at it to see if [she] liked it 'cause [she] was going to be paying to go." [*Id.* (citing (Doc. No. 53-2 at 15, 62:20-23)]. That Plaintiff may have participated in planning the trip *after* Loon had already been selected as the destination does not establish a nexus between her and Loon's conduct, particularly with respect to her claims arising from an injury at Loon's resort in New Hampshire. Third, the record shows that after Kosta suggested Loon, *Caity* conducted research on the website. As Plaintiff emphasizes in her opposition, [see Doc. No. 57-1

9

at 2, 5, 8, 9], Loon's child-friendly offerings were a factor in the group's dec in the "***group's decision***" to go — but that says nothing about what, if anything, Loon did to influence ***Plaintiff*** herself to go. Finally, there is no evidence, either in Plaintiff's affidavit or in her testimony, that she reviewed Loon's website or relied on its advertising to learn about skiing or tubing offerings or to inform her decision to go on the trip. Rather, she accessed the website only to purchase lift tickets for herself and her boyfriend after the decision to go to Loon had already been made. The fact that Plaintiff may have generally "understood" that Loon held itself out as a family-friendly destination offering more than skiing does not establish that she personally researched Loon, viewed its advertising, or decided to attend the trip because of Loon's conduct in Massachusetts. [Doc. No. 57-2 at ¶ 10].

The case *Christopher v. Mount Snow, Ltd.*, No. 95-cv-10352, 1996 WL 590738 (D. Mass. Sept. 24, 1996) is instructive. There, plaintiff Nicole Christopher, a Massachusetts resident, was injured at the Mount Snow ski resort in Vermont. *Id.* at *1. She alleged that Mount Snow's advertising in Massachusetts led her to plan a ski trip there. *Id.* at *2. The court held that jurisdiction was proper under the Massachusetts long-arm statute because the complaint alleged that, but for those advertisements, the plaintiff "would not have gone to Mount Snow and she would not have been injured." *Id.* at *3. However, the court further held that the exercise of jurisdiction did not satisfy Due Process because the plaintiff could not establish the "relatedness" prong. Specifically, the court found that "Mount Snow's advertisements in Massachusetts were not the proximate cause of the plaintiff's injury on the ski slopes of Vermont. They may have precipitated her visit to Mount Snow. However, they did not cause her injury under any definition of legal or proximate cause." *Id.* at *6.

The court also distinguished *Christopher* from *Nowak v. Tak How Investments, Ltd.,* 1996 WL 469264 (1st Cir. 1996). In *Nowak*, the First Circuit held that the district court had personal jurisdiction over a Hong Kong hotel for the wrongful death of plaintiff's wife after she drowned in the hotel's pool while staying with the plaintiff during the plaintiff's business trip. *Id.* at 716. The complaint alleged that the hotel had an ongoing business relationship with the Massachusetts-based company for whom the plaintiff worked, and that the hotel engaged in extensive back-and-forth communication with the company when booking hotel rooms for its employees and contacted the company regarding corporate rates and other promotional materials. *Id.* at 711. This direct solicitation "set in motion a chain of reasonably foreseeable events resulting in Mrs. Nowak's death." *Id.* at 716 (citation omitted). The First Circuit held that while the nexus between the hotel's solicitation and the plaintiff's wife's death "does not constitute a proximate cause relationship, it does represent a meaningful link between [the hotel's] contact and the harm suffered," such that dismissal was not warranted at the pleading stage. *Id.*

This case is more like *Christopher* and less like *Novack*. Unlike *Novak*, there is no evidence that Loon solicited Plaintiff's business personally. Like *Christopher*, Loon's "advertisements in Massachusetts were not the proximate cause of the plaintiff's injury on the ski slopes of [New Hampshire]." *Christopher*, 1996 WL 590738, at *6. Here, the evidence unequivocally shows that the Plaintiff did not select Loon as the destination and that her decision to participate in the trip was not influenced by any advertising Loon conducted in Massachusetts. Accordingly, I agree with Loon that, "[n]ow that discovery has been conducted and depositions have been taken, the rationale underpinning this Court's decision on the relatedness prong of the specific jurisdiction test clearly lacks factual support." [Doc. No. 54 at 8].

## B.    Transfer

Pursuant to 28 U.S.C. § 1631, "a Court is authorized to – instead of dismissing a civil action – transferring such action from one venue to another whenever it finds that it lacks jurisdiction and that a transfer is consistent with the interest of justice." *Value Based Consultants, LLC v. Ring MD USA, Inc.*, No. 24-cv-1596, 2025 WL 2848578, at *7 (D.P.R. Oct. 8, 2025) (citing *Subsalve USA Corp. v. Watson Mfg., Inc.*, 462 F.3d 41, 43 (1st Cir. 2006)). "The First Circuit has interpreted this provision to establish a presumption in favor of transfer—rather than dismissal—when the forum court lacks personal jurisdiction over one of the defendants." *TargetSmart Holdings, LLC v. GHP Advisors, LLC*, 366 F. Supp. 3d 195, 214 (D. Mass. 2019) (citing *Fed. Home Loan Bank of Boston v. Moody's Corp.*, 821 F.3d 102, 119 (1st Cir. 2016)). Additionally, under 28 U.S.C. § 1404(a), "in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought," and under 28 U.S.C. § 1406(a), a district court may "transfer [a] case to any district or division in which it could have been brought," if the case "lay[s] venue in the wrong division or district" and transfer is "in the interest of justice."

To determine whether transfer is appropriate and where the case should be transferred to, the Court must consider the issue of venue. Pursuant to 28 U.S.C. § 1391(b), the general venue statute, a civil action may be brought in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

*See also Collision Commc'ns, Inc. v. Nokia Sols. & Networks Oy*, 485 F. Supp. 3d 282, 298 (D. Mass. 2020). Here, "[b]oth Sections 1406 and 1631 support transfer over dismissal in the interests

12

of justice and to promote judicial economy." *Id.*; *see also Doe # 1 v. JetBlue Airways Corp.*, No. 20-cv-11623, 2021 WL 3375107, at *8 (D. Mass. Aug. 3, 2021).

The District of New Hampshire is the proper venue for this action, as the Plaintiff's injury occurred there and the Defendant resides there. Because the relevant public-interest factors favor transfer rather than dismissal, it is appropriate, in the interest of justice, to transfer this case to the United States District Court for the District of New Hampshire. *See also Christopher*, 1996 WL 590738, at *1 (dismissing claim for lack of personal jurisdiction but explaining that "plaintiff may reassert her claim in federal or state court in Vermont if she wishes to do so.").

## V.    CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment, [Doc. No. 53], is GRANTED. This matter is hereby TRANSFERRED to the District of New Hampshire.

SO ORDERED.

/s/ Myong J. Joun
United States District Judge